UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 20-1952-GW-KKx | Date | July 8, 2021 |
| Title | *Paviell Johnson v. Green Dot Corporation* | Page | 1 of 1 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Terri A. Hourigan |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| Lauren B. Veggian | Jeffrey R. Witham |

**Proceedings: TELEPHONIC HEARING ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [27]**

Court hears further argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion is DENIED. Plaintiff may proceed with her EFTA claim because she possesses a prepaid account with Defendant, and prepaid accounts fall within the ambit of the EFTA.

TIC: 16

***Paviell Johnson v. Green Dot Corporation***; Case No. 5:20-cv-01952-GW-(KKx)
Tentative Ruling on Defendant's Motion to Compel Arbitration Following Supplemental Briefing

I.   Background

Plaintiff Paviell Johnson filed her tax returns in early 2020 expecting a tax refund. The refund was deposited into a Walmart MoneyCard issued by Defendant Green Dot Corporation and mailed to her home. Unfortunately, the debit card was stolen with her mail, and the thief emptied the debit card of Plaintiff's entire tax refund. Plaintiff Johnson alleges that Defendant Green Dot acted negligently and violated the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, by failing to conduct a reasonable investigation into her fraud claim, failing to provide required notices, and failing to provisionally credit her account of the stolen funds during the investigation. First Amended Complaint ("FAC") ¶¶ 42-58, ECF No. 23. Johnson also included claims for conversion and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. FAC ¶¶ 66-93. She seeks compensatory, punitive, and statutory damages as well as attorney fees.

Before the Court is Defendant Green Dot's motion to compel arbitration. *See* Defendant's Motion to Compel Arbitration ("Mot."), ECF No. 27. Plaintiff Johnson has filed an Opposition ("Opp."), *see* ECF No. 28, and Defendant Green Dot has provided a Reply, *see* ECF No. 32. After circulating a tentative ruling and hearing oral argument, the Court requested simultaneous supplemental briefing and response on whether Plaintiff's claim properly fell within the ambit of the EFTA. *See* ECF Nos. 34-37.

For the reasons set forth below, the Court **DENIES** Defendant's motion to compel.

A.   Factual Background

Plaintiff Johnson hired a tax preparer, Ms. Sharon Dent, to prepare and file her taxes. Declaration of Paviell Johnson ("Johnson Decl.") ¶ 3, ECF No. 28-1. Johnson had no written agreement with Dent, but Johnson submits that she instructed Dent to have her tax refund placed on a check because she was having issues with mail theft at the time. *Id*. ¶¶ 4-6. Despite her instructions, Dent placed Johnson's tax return, which totaled $5,048.10, on a Walmart MoneyCard issued by Defendant Green Dot. *See id*. ¶ 7; FAC ¶ 30. Defendant Green Dot confirms it issued an account for a MoneyCard for Johnson on January 27, 2020. Declaration of Patty Villareal ("Villareal Decl.") ¶ 5, ECF No. 27-1. Johnson claims that she never entered into any agreements with Defendant Green Dot nor authorized anyone, including Dent, to enter into

1

any agreements with Green Dot on her behalf.  Johnson Decl. ¶¶ 7-10.

After Johnson learned that her tax refund had been processed, she spoke to Dent and learned for the first time that her refund had been placed on the debit card and sent to her address in Twentynine Palms, CA.  *Id*. ¶¶ 7-10.  Plaintiff Johnson did not receive her tax refund, so she suspected it had been stolen.  She contacted Defendant Green Dot on February 25 and February 26, 2020 to report the theft of the debit card and to attempt to freeze available funds but received little help.  *Id*. ¶¶ 13-18.  Green Dot received calls from someone that identified herself as Johnson on March 2 and March 4, 2020.  *See* Villareal Decl. ¶¶ 13-14.  Johnson maintains that the March calls were by the identity thief, posing as her.  Johnson Decl. ¶ 22.  On the March 4, 2020 call, the caller changed the address associated with the debit card to an address in Los Angeles while attempting to use the card to pay for gas.  *See* Villareal Decl. ¶¶ 13-14; Johnson Decl. ¶ 22.

Johnson continued calling Green Dot to get assistance with her tax return to no avail.  *See* Johnson Decl. ¶ 18.  She eventually was able to obtain a list of transactions charged to the debit card, which showed that the debit card had been used extensively in Los Angeles starting on February 28, 2020.  *Id.* ¶ 20.  Johnson submits that she never received the Walmart MoneyCard, never received or agreed to the Defendant's Cardholder Agreement (the "Agreement"), and is not responsible for the charges on her card.  *Id.* ¶¶ 24-27.  On March 27, 2020 Johnson filed a police report for identity theft and theft of her tax refund.  *See id*. ¶ 22, Exh. 2.

B. Procedural Background

Plaintiff filed her original complaint on September 17, 2020.  *See* Complaint, ECF No. 1.  Defendant filed its answer on October 21, 2020.  *See* Answer, ECF No. 12.  The parties submitted a Joint 26(f) Report, *see* ECF No. 16, and the Court issued a Scheduling Order soon after, *see* ECF No. 18.  The Court gave Plaintiff leave to amend her complaint, and she filed her FAC on April 1, 2021.  Defendant moved to compel arbitration soon after in April 29, 2021.  *See* Mot.  In its Reply brief, Defendant relied on an official staff interpretation of the EFTA to raise a novel argument that the EFTA only applies to "an account for which an agreement for EFT services to or from the account has been entered into."  *See* Reply at 3-4 (citing "12 C.F.R. § 1005.3 app. C, supp. I, ¶ 3(a)"[1]).  After circulating a tentative ruling and considering oral argument, *see* ECF No. 33, the Court requested supplemental briefing on three issues: (1)

---

[1] The correct citation is 12 C.F.R. Appendix C to Part 1005, Supp. I, ¶ 3(a).

whether Plaintiff Johnson should be estopped from bringing her EFTA claim because she maintains that she never entered into the Agreement in relation to her Walmart MoneyCard account; (2) if the EFTA claim is dismissed, whether the Court should retain supplemental jurisdiction over the state claims; and (3) if Johnson does not have a contractual relationship with Green Dot and Dent is held not to be Johnson's agent, on what basis can Johnson sue Green Dot directly? *See* ECF No. 33 at 6 n.1. The parties have submitted simultaneous supplemental briefing, *see* ECF Nos. 34-35, and response, *see* ECF Nos. 36-37.

## II. Legal Standard

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010). A party aggrieved by the refusal of another party to arbitrate under a written arbitration agreement may petition the court for an order compelling arbitration as provided for in the parties' agreement. *See* 9 U.S.C. § 4. "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). "The court's role under the [FAA] is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)). The party seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

## III. Discussion

Defendant Green Dot seeks to compel arbitration arguing that Dent, acting as Johnson's agent, assented to the Agreement when creating the MoneyCard account. Reply at 2-3. Green

Dot further argues that Plaintiff ratified her agent's assent to the Agreement by attempting to use the card, calling Green Dot's customer service representatives multiple times, and by bringing causes of action under the EFTA, which requires an "account" as defined by 15 U.S.C. 1693a(2). *Id.* at 3-4. Finally, Green Dot argues that if Johnson never entered into the Agreement, she should be estopped from bringing a claim under the EFTA. *See id.* at 2-3.

Plaintiff Johnson submits that she never gave authority to her tax preparer to open a MoneyCard account and never gave her authority to enter into any Agreement. Opp. at 9. She maintains that she was the victim of identity theft and never received the MoneyCard at all, making it impossible that she used the card and ratified the agreement. *Id.* As she never authorized the creation of the MoneyCard, never authorized entering into the Agreement, never received the card, and never used the card, Johnson argues she should not be compelled into arbitration. In addition, Johnson argues that the arbitration clause is unconscionable, and that Defendant waived its right to compel arbitration by delaying in bringing its motion. *Id.* at 14-19.

    A. <u>Did Johnson Assent to the Cardholder Agreement?</u>

The threshold inquiry is whether there was an agreement to arbitrate, and the Court finds that Defendant Green Dot has not met its burden to demonstrate the existence of an agreement to arbitrate. Green Dot maintains that Dent, acting as Johnson's tax preparer and agent, entered into the Agreement for Johnson when creating the MoneyCard account. Green Dot seemingly does not dispute that Dent lacked actual authority, instead arguing in its Reply that either (1) Dent had implied authority to enter into the Agreement as an incidental task to preparing and filing Johnson's taxes or (2) Johnson had ratified her assent to the Agreement with her actions. *See* Reply at 2-3.

Defendant Green Dot devotes little explanation as to why depositing tax refunds into a MoneyCard and entering into the Agreement was incidental to preparing and filing taxes. While it is true that an agent has implied authority to "use any means that are incidental to and reasonably proper in the performance of an assigned task," it is not clear to the Court that Dent had the implied authority to enter Johnson into the Agreement. *Garber v. Prudential Ins. Co. of Am.*, 203 Cal. App. 2d 693, 701 (1962). Defendant has failed to provide any supporting authority that finds implied authority in a similar situation where the principal specifically instructed against the action. Here, Johnson, specifically requested that her return be placed on a check, not on a debit card. *See* Johnson Decl. ¶¶ 5-7. Dent also could have easily prepared and

4

filed Johnson's taxes without opening a MoneyCard or entering into the Agreement by simply requesting the refund on a check. The existence of an agency relationship is a question of fact, and Defendant offers scant evidence or argument that entering into the Agreement was incidental to the preparing and filing of taxes. *See Leno v. Young Men's Christian Assn.*, 17 Cal. App. 3d 651, 658 (1971) ("The existence of an agency is a question of fact"). The Court thus finds that Dent did not have implied authority to enter Johnson into the Agreement as an incidental task to preparing and filing her taxes.

Green Dot also provides little evidence supporting the idea that Johnson ratified Dent's acceptance of the Agreement. Johnson submits that she was the victim of identity fraud, that she never received the MoneyCard, and that she had never used the MoneyCard. *See* Johnson Decl. ¶¶ 5-7. Green Dot seems to contest these facts and maintains that Johnson called and "identified herself as Paviell Johnson" before attempting to set up her pin and change her address. *See* Villareal Decl. ¶¶ 13-14; Reply at 3. Green Dot, however, offers nothing to counter Johnson's account of events: that the identity thief called Green Dot and falsely identified herself as Johnson to pose as her and steal her tax refund. In that likely scenario, there would be no ratification and Green Dot has not shown by a preponderance of the evidence that Johnson, not the identity thief, made the calls in question. Green Dot also claims that Johnson ratified Dent's actions by calling Green Dot's customer service representative several times in order to report that her card had been stolen. Green Dot again submits no authority supporting such a claim. The Court finds that Johnson did not ratify the actions of her tax preparer by calling Green Dot customer service representatives to report that the debit card had been created in error and had been stolen. Johnson had little recourse at that point, and Green Dot provides no argument to support the proposition that Johnson attempted to ratify or accept the benefits of her agent's act in reporting the unwanted debit card stolen. The Court finds that Green Dot has not met its burden to show the existence of an agency relationship because the current record contains genuine disputes of material fact regarding whether Johnson ratified the actions of her tax preparer.

Furthermore, Johnson argues that she never gave written authorization to enter into a contract, as required by the "equal dignities" rule. *See* Cal Civ. Code § 2309 ("An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."). Johnson

5

argues that arbitration agreements are required to be in writing, so Dent needed a written agreement with Johnson before she could enter into an arbitration agreement on her behalf. *See* Opp. at 6. Green Dot seemingly does not contest that Section 2309 applies but argues that Johnson is estopped from relying on Section 2309 because of her actions ratifying the agreement. *See* Reply at 2-3. As stated above, Green Dot has not met its burden to show that Johnson, and not her identity thief, ratified the actions of Dent. The Court finds that Section 2309 provides another reason to prevent compelled arbitration at this point.

Finally, Green Dot brings a novel argument that Johnson ratified her tax preparer's entering into the Agreement by bringing a cause of action under the EFTA. Green Dot argues that bringing a claim under the EFTA requires an account "for which an agreement to EFT services to or from the account has been entered," so Johnson cannot both claim that she never entered into the Agreement and that she possesses an account as required by the EFTA. 12 C.F.R. § 1005.3 app. C, supp. I, ¶ 3(a). Even assuming *arguendo* that a requirement for EFT services to or from an account exists, Defendant offers no authority for the proposition that a principal can ratify the actions of her agent by bringing a claim under the EFTA. The Court also notes that there is no evidence indicating that Johnson, rather than her counsel, had any part in deciding to bring a claim under the EFTA. The Court thus finds that Johnson did not ratify entering into the Agreement by bringing an EFTA claim in this suit.

The Court finds that Plaintiff Johnson did not ratify the actions of her tax preparer Dent and did not assent to the Agreement. Johnson therefore cannot be compelled to arbitration based on the current record.

      B.    <u>Can Johnson Bring an EFTA Claim While Maintaining That She Never Entered into the Cardholder Agreement?</u>

Green Dot argued in its Reply brief that Johnson should either be bound by the Agreement (and compelled to arbitration) or should be estopped from bringing her EFTA claim. Reply at 2-3. Relying on official interpretations from the Federal Reserve Board, Green Dot submitted that the interpretation of "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. § 1005.2(b)(1) required an account "for which an agreement to EFT services to or from the account has been entered." *Id.* Since Johnson maintained that she never entered into the Agreement, Green Dot argued that Johnson did not possess an account with an agreement for EFT services as required for bringing a claim under the EFTA. The Court ordered the parties to provide supplementary briefing on that issue as well as two others: (1) if the EFTA claim is

dismissed, whether the Court should retain supplemental jurisdiction over the state claims; and (2) if Johnson does not have a contractual relationship with Green Dot and Dent is held not to be Johnson's agent, on what basis can Johnson sue Green Dot directly? *See* ECF No. 33 at 6 n.1. The parties have submitted simultaneous supplemental briefing, s*ee* Defendant's Supplemental Brief ("Def. Supp."), ECF No. 34; Plaintiff's Supplemental Brief ("Supp."), ECF No. 35, as well as responses, s*ee* Defendant's Response ("Def. Resp."), ECF No. 37; Plaintiff's Response ("Resp."), ECF No. 36.

In her Supplemental Brief, Plaintiff informs the Court that since the passage of the Dodd-Frank Wall Street Reform and Consumer Protection ("Dodd-Frank") Act, the Consumer Financial Protection Bureau ("CFPB"), not the Federal Reserve Board, maintains rulemaking authority over the EFTA. Further, in November 2016, the CFPB amended the EFTA regulations to include protection for "prepaid accounts," which would encompass Johnson's account for her Walmart MoneyCard. *See* Supp. at 1-2; 12 C.F.R. 1005.2(b)(1)-(3). Plaintiff argues that she can sue Green Dot directly because the EFTA was amended to apply to prepaid accounts like hers, and Defendant acted in accordance with EFTA guidelines in its interactions with her. *See* Supp. at 4-6. Plaintiff further avers that the plain statutory language for the definition of "account" is unambiguous, so *Auer* deference to staff interpretations is unnecessary and unwarranted. *See* Supp. at 6-8; *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2410 (2019) ("But all that said, *Auer* deference is not the answer to every question of interpreting an agency's rules. Far from it . . . . [T]he possibility of deference can arise only if a regulation is genuinely ambiguous."). Finally, Plaintiff argues that if the EFTA claim is dismissed, the Court should retain supplemental jurisdiction over the state law claims in the interest of judicial economy. *See* Supp. at 8-9.

In its Supplemental Brief, Defendant Green Dot has shifted its argument substantially. Defendant concedes that in July 2011, rulemaking authority under the EFTA transferred from the Federal Reserve Board to the CFPB pursuant to the Dodd-Frank Act. Def. Supp. at 4. Defendant also appears to concede that the CFPB expanded the EFTA to include prepaid accounts and that Johnson's account is a prepaid account, but now argues that Green Dot was not required to comply with the EFTA's requirements regarding liability limits and error resolution because Plaintiff had not successfully completed the consumer identification and verification process. *See* Def. Supp. at 2-3; 12 C.F.R. § 1005.18(e)(3) ("For prepaid accounts . . . a financial institution is not required to comply with the liability limits and error resolution requirements . . .

for any prepaid account for which it has not successfully completed its consumer identification and verification process."). Despite the transfer of authority, Defendant maintains that the official interpretation provided by the Federal Reserve Board remains instructive and points to other language in the EFTA that seems to rely on the existence of a contractual agreement or agreed on terms and conditions. *See* Def. Supp. at 4-6. Defendant also cites to two cases that rely on the Federal Reserve Board interpretation to hold that an agreement for EFT services was required to bring a claim under the EFTA. *See Dorsey v. U.S. Bank Nat'l Ass'n*, No. 11-CV-231-JJB, 2012 WL 13001917, at *6 (M.D. La. Apr. 2, 2012) (holding that a claim could not be brought against PayPal under the EFTA because the PayPal account was created without the owner's knowledge or consent); *Marquess v. Pennsylvania State Emps. Credit Union*, 427 F. App'x 188, 189 (3d Cir. 2011) (holding that the EFTA did not apply to an account that was fraudulently opened for an unwitting third party because the third party never entered into an agreement for EFT services). Defendant avers that if the EFTA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims. Def. Supp. at 7. Finally, Defendant argues that Plaintiff's UCL, negligence, and conversion claims should be dismissed because they rely on Plaintiff having a contractual relationship with Defendant. *See* Def. Supp. at 8-10.

After carefully reviewing the supplementary briefing and responses, the Court holds that Plaintiff should be allowed to proceed with her EFTA claim because the EFTA applies to "prepaid accounts" like the account associated with Plaintiff Johnson's Walmart MoneyCard. A "prepaid account" includes an "account that is marketed or labeled as 'prepaid' and that is redeemable upon presentation at multiple, unaffiliated merchants for goods or services or usable at automated teller machines." 12 C.F.R. § 1005.2(b)(3)(i)(C). This includes the account tied to Plaintiff's Walmart MoneyCard, a prepaid debit card[2] that has been already been presented and redeemed at multiple unaffiliated merchants by the identity thief. *See* Supp. at 1-2; Johnson Decl. ¶ 19, Exh. 1. While the facts in the *Dorsey* and *Marquess* cases mirror the present case and those courts required an account that included an agreement for EFT services, the regulations

---

[2] The Court confirms that the Walmart MoneyCard was advertised as a prepaid debit card. *See* Supp. at 1-2 (referring to www.sbtpg.com which advertises a "Green Dot Prepaid Visa Card"); *see also Walmart MoneyCard*, Walmart.com, https://www.walmart.com/help/article/walmart-moneycard/b7b079a10b1643fea855b70e435e101f (last visited June 25, 2021) ("The Walmart MoneyCard is a prepaid debit card that offers a safer, more convenient way to pay than cash.").

have been updated by the CFPB since those decisions.  The parties appear to agree that the CFPB included a different requirement for prepaid accounts; specifically, completion of the "consumer identification and verification process."  12 C.F.R. § 1005.18(e)(3); *see* Def. Supp. at 2-3; Resp. at 3-4.  And both parties concede that the consumer identification and verification process was completed here, although Johnson maintains it was completed by the identity thief posing as her and not by Johnson herself.  *See* Resp. at 3-4; Villareal Decl. ¶¶ 13-14.  Neither party has provided the Court with any authority indicating that the consumer identification and verification process is considered incomplete for a prepaid account in the case of identity theft, or if the verification process is completed by someone other than the actual consumer.  The Court thus agrees with Plaintiff and finds that her claims related to her prepaid account fall within the ambit of the EFTA.

The Court also notes that this broad interpretation of the EFTA aligns with Congress's intention to have the EFTA provide a comprehensive scheme of federal regulation for all electronic transfer of funds.  *See Kashanchi v. Texas Com. Med. Bank, N.A.*, 703 F.2d 936, 938-40 (5th Cir. 1983) (reviewing legislative history and finding that "Congress undoubtedly intended the Act's coverage to be broad" especially with respect to evolving electronic fund transfer systems such as prepaid cards and accounts).  In contrast, under Defendant's interpretation of the EFTA, the EFTA would offer robust protection from unauthorized transfers to consumers who were victims of identity fraud *after* they received and validated a prepaid card, but would offer absolutely *zero* protection in situations where the prepaid cards were stolen in transit and validation was completed by the thief.  The Court finds this interpretation would run counter to the goals of the EFTA.[3]

Finally, as the Court is allowing the EFTA claim to proceed, it retains supplemental jurisdiction over the state law claims.  The Court will also refrain from addressing Defendant's arguments for dismissal of the remaining state law claims until the issues can be more completely briefed.[4]

---

[3] Further, there is no apparent dispute that the money that was placed into (or utilize to open) the Walmart MoneyCard came from Johnson's tax refund.

[4] For example, Defendant argues that it owes no duties to the Plaintiff in the context of a negligence claim if there is no contractual relationship between the parties.  Def. Supp. at 8-9.  The Court, however, is unclear if Defendant owes no duties in this instance where an identity thief has stolen Plaintiff's property while it was under the Defendant's control, even in the absence of a contractual agreement.  Plaintiff has also failed to respond to the dismissal arguments, citing procedural improprieties.  *See* Resp. at 1 ("These arguments cannot be entertained

**IV.     Conclusion**

For the foregoing reasons, the Court **DENIES** Defendant's motion to compel arbitration. Johnson never gave authority to her tax preparer Dent to enter into the Agreement. Defendant fails to provide sufficient evidence showing that Johnson, and not the identity thief, took actions that it claims ratified assent to the Agreement. Plaintiff may proceed with her EFTA claim because she possesses a prepaid account with Defendant, and prepaid accounts fall within the ambit of the EFTA.

---

without first, a meet and confer by the parties, and secondly, by appropriately noticing of a motion to dismiss or summary judgment motion.").